## THE JUNCTION RAILROAD COMPANY *v.* THE BANK OF ASHLAND.

1. If a bond be not usurious by the law of the place where payable, a plea of usury cannot be sustained in an action thereon, unless it alleges that the place of payment was inserted as a shift or device to evade the law of the place where the bond was made.

2. Where a plea is erroneously overruled on demurrer, and issue is joined on another plea, under which the same defence might be made, the judgment will not be disturbed after verdict.

3. A prohibition against lending money at a higher rate of interest than the law allows will not prevent the purchase of securities at any price which the parties may agree upon.

4. Whether a negotiation of securities is a purchase or a loan, is ordinarily a question of fact; and does not become a question of law until some fact be proven irreconcilable with one or the other conclusion.

5. Though the negotiation of one's own bond or note is ordinarily a loan in law, yet if a sale thereof be authorized by an act of the legislature, it becomes a question of fact, whether such negotiation was a loan or a sale.

6. The requiring or giving of collateral security for the payment of a bond when negotiated, is not inconsistent with the transaction being a sale.

7. The law of Ohio authorizing railroad companies to sell their own bonds and notes at such prices as they may deem expedient, is extended by comity to the companies of other States authorized to transact business in Ohio.

---

* 1 Stat. at Large, 205; Ib. 287.

8. A corporation cannot plead usury to a bond payable in New York. Statute law there prevents it.

9. The courts of the United States will take judicial notice of the public laws of the several States; and, in Indiana, of the private as well as public laws of that State.

ERROR to the Circuit Court for the District of Indiana.

This was an action of debt brought by the Bank of Ashland, a corporation of Kentucky, against the Junction Railroad Company, a corporation of Indiana, to recover the amount of nine bonds of the latter company for one thousand dollars each, with interest coupons attached. The bonds bore date the 1st day of July, 1853, and were payable to Caleb Jones, or bearer, at the office of the Ohio Life Insurance and Trust Company, in the city of New York, on the 1st day of July, 1863, with interest at the rate of ten per cent. per annum, payable half-yearly. The declaration contained twenty special counts on the bonds and coupons, and one common count for money lent, paid, had and received, and account stated. To the last count there was a plea of *nil debet*, and to the twenty special counts the defendant filed four special pleas, the substance of which was that the bonds were obtained by the plaintiff from the Ohio Life Insurance and Trust Company, and that they were originally negotiated by the defendant to that company in Cincinnati at par, under the pretence of a sale of the bonds, but, in truth, by way of a loan of money from the Ohio Trust Company to the defendant, upon interest at the rate of ten per cent. per annum—a rate which, as stated in the first special plea, the Ohio Company, by its charter, was prohibited from taking, and which, as stated in the second of said pleas, the defendant, by the law which authorized it to do business in Ohio, was prohibited from paying; and which, as stated in the third plea, was forbidden by the usury laws of New York, where the bonds were made payable. The pleas alleged that the plaintiff took the bonds with notice of the usurious consideration. These pleas being demurred to and overruled, the defendant filed a fourth special plea to the same counts, setting forth substantially the same facts as in the first plea,

with a more specific averment of a corrupt and usurious
agreement.    To this plea the plaintiff replied that the bonds
were purchased from the defendant by the Ohio Life and
Trust Company in good faith, and that the plaintiff received
them in good faith, with the assurance and belief that they
had been so purchased and had not been received as security
for a loan.

A jury being waived, the cause was tried by the court,
which made a special finding of the facts; the substance of
which was, that the bonds declared on were, as alleged in
the pleas, originally negotiated by the defendant below to
the Ohio Life Insurance and Trust Company, at its office in
Cincinnati, Ohio, at par, being parcel of one hundred and
twenty-five bonds negotiated together; that the defendant
proposed to sell the bonds to the Trust Company, but the
latter refused to take them unless some persons other than
the defendant would guaranty their payment, which was
done; whereupon the negotiation was consummated; that
said negotiation did not amount to a loan of money, but to
a sale of the bonds, and that the transaction involved nothing
usurious; that in 1857 the Trust Company transferred the
bonds to the plaintiff below in payment of a debt; and that
the plaintiff took them in good faith, without any notice of
the fact of usury or of illegality in the issuing of the bonds,
but had notice of the guaranty.   Upon these facts the court
below gave the plaintiff judgment for the full amount of the
bonds and interest; and the defendant brought the case here.

To enable the reader the better to judge at this point of
the case, whether the judgment below was rightly or not
rightly given, it should be mentioned, that in New York by
a statute enacted April 6th, 1850, a defence of usury cannot
be set up by corporations; that by a supplement to its char-
ter, dated January 29th, 1851, the Junction Railroad Com-
pany was empowered to borrow money or sell its securities
at any rate of interest; and that by statute of Ohio, passed
December 15th, 1852, any railroad company authorized to
borrow money and issue bonds for it, may sell its bonds
when, where, and at such rate and price as the directors

deem most-advantageous to the road; and finally, that by a second statute of the same State, the Junction Railroad Company was made a corporation of Ohio, and authorized to perform any act as if originally incorporated therein.

*Messrs. C. P. James, Rufus King, and S. J. Thompson, for the plaintiffs in error; Messrs. A. G. Porter and W. H. Wadsworth, contra.*

Mr. Justice BRADLEY delivered the opinion of the court.

Unless this case has become embarrassed by the pleadings, the facts as found by the court present a clear case in favor of the plaintiff. If they could have been given in evidence under the common count, we should have felt no hesitation in sustaining the judgment on that count alone, disregarding the special counts and the pleadings thereto. But it has been held that an agreement under seal for the payment of money cannot be received to support the common money counts. It will be necessary, therefore, to examine the case with reference to the defences set up in the special pleas. In all of them usury and want of authority in the original parties to make the negotiation are the points of defence relied on.

With regard to the question what law is to decide whether a contract is, or is not, usurious, the general rule is the law of the place where the money is made payable; although it is also held that the parties *may* stipulate in accordance with the law of the place where the contract is made. In this case it is conceded by all the pleas, and shown by the special finding of the court, that the place of payment of the bonds in question was the city of New York. By the law of that State, passed April 6th, 1850 (of which the Circuit Court had a right to take judicial notice),* no corporation is allowed to interpose the defence of usury. None of the special pleas allege that the place of payment mentioned in the bonds was adopted as a shift or device to avoid the statute of usury. The device complained of was a pretended sale of

---

* Owings *v.* Hall, 9 Peters, 625.

the bonds, when the transaction was really a loan. Admitting that it was a loan, it is not denied that it was made *bonâ fide* payable in New York. Hence the pleas cannot stand as pleas of usury, properly so called. They must stand, if at all, on the allegation that one or both of the contracting parties was prohibited by law from making such a contract.

It is certain, however, that no such prohibition exists in the case of the defendant. By the supplement to its charter, passed by the legislature of Indiana January 29th, 1851,. it was authorized to borrow money or sell its securities at any rate of interest or price it might deem proper. The courts in Indiana are authorized by the constitution of that State to take judicial notice of all its laws; and, therefore, the Circuit Court could take judicial notice of this law. By the law of Ohio, passed December 15th, 1852, any railroad company authorized to borrow money, and to execute bonds or promissory notes therefor, was authorized to sell such bonds or notes at such times and in such places, either within or without the State, and at such rates, and for such prices, as in the opinion of the directors might best advance the interests of the company. This is tantamount to a repeal of the usury laws as to such companies. And although this law, had primary reference to the railroad companies of Ohio, yet the Supreme Court of that State, in a very sensible and judicious opinion, has decided that it extends by comity to railroad companies of other States borrowing money in Ohio. Indeed, the second special plea sets forth a statute of Ohio, in relation to this very defendant, which makes it a corporation of Ohio, as well as Indiana, and authorizes it to perform any act within the State of Ohio the same as if it had originally been incorporated therein. This act, it seems to us, rendered the exercise of comity hardly necessary to bring the defendant within the privileges of the Ohio act of 1852.

It must be conceded, therefore, *first*, that the transaction in question, if a loan at all, was not a usurious loan by the law of the place which governed the contract; and, *secondly*, that the defendant had a perfect right to make it. This ob-

servation is applicable to all the special pleas, and disposes entirely of the second of them, in which the defendant relies on its own disability to borrow money at a higher rate of interest than seven per cent.; and also disposes of the third of said pleas, in which the statute of usury of the State of New York is pleaded. There remains, then, only the first plea, in which the point is taken that the Ohio Life Insurance and Trust Company was, by its charter, prohibited from *taking* more than seven per cent. interest. This point is fully presented in the last plea on which issue was taken, and the defendant can, therefore, receive no harm, though the demurrer to its first plea was wrongly sustained. It still had the benefit of that defence under the last plea; and the result is presented to us in the finding of the court. That finding is, that the transaction was not a loan at all, but only a sale of the bonds; and it is not pretended that the Ohio Life and Trust Company might not *purchase* securities of this sort at any price it might deem expedient. But the defendant contends that this was a conclusion of law on the part of the court, and that it was erroneous. Surely the question whether a negotiation of bonds was a sale or a loan is ordinarily, and *primâ facie*, a question of fact. To make it a question of law, some fact must be admitted or proved, which is irreconcilable with one conclusion or the other. What fact in this case is irreconcilable with the conclusion that this negotiation was a sale? The defendant contends that the fact that the bonds were its own obligations is such a fact, and alleges that in law a party cannot sell its own obligations to pay money. But it certainly may do this, if authorized by law to do it; and it is shown that this very thing was authorized by the laws of Ohio, to the benefit of which the defendant was expressly, as well as by comity, entitled.

Again, the defendant alleges that the exaction of collateral security for the payment of the bonds was a fact wholly irreconcilable with a sale. We do not think so. Once concede that the obligor may sell its own bonds, what difference can it make how fully and strongly they may be secured?

The requirement of guaranties can only amount to evidence of intention at most; the weight of which, in connection with all the circumstances of the case, is to be judged of by the tribunal to which the facts are submitted.  This has been fairly done in the present case, and the decision is against the defendant.

In this view of the case we do not decide whether the demurrer to the first plea was, or was not, well taken.  We are disposed to think that it was; but do not deem it necessary to incumber the case with the discussion of that question.

JUDGMENT AFFIRMED.