### CROMWELL *v.* COUNTY OF SAC.

### COUNTY OF SAC *v.* CROMWELL.

1. An overdue and unpaid coupon for interest, attached to a municipal bond which has several years to run, does not render the bond and the subsequently maturing coupons dishonored paper, so as to subject them, in the hands of a purchaser for value, to defences good against the original holder.
2. A *bona fide* purchaser of negotiable paper for value, before maturity, takes it freed from all infirmities in its origin, unless it is absolutely void for want of power in the maker to issue it, or its circulation is by law prohibited by reason of the illegality of the consideration. Municipal bonds, payable to bearer, are subject to the same rules as other negotiable paper.
3. Though he may have notice of infirmities in its origin, a purchaser of a municipal bond from a *bona fide* holder, who obtained it for value before maturity, takes it as freed from such infirmities as it was in the hands of such holder.
4. A purchaser of negotiable securities before their maturity, whatever may have been their original infirmity, can, unless he is personally chargeable with fraud in procuring them, recover against the maker the full amount of them, though he may have paid therefor less than their par value.
5. When, at the place of contract, the rate of interest differs from that at the place of payment, the parties may stipulate for either rate, and the contract will govern.
6. Under the law of Iowa, municipal bonds in that State drawing ten per cent interest before maturity draw the same interest thereafter, and matured coupons attached to them draw six per cent. Judgments there rendered upon such bonds and coupons draw interest on the amount due on the bonds at the rate of ten per cent a year, and on that due on the coupons at the rate of six per cent a year.

ERROR to the Circuit Court of the United States for the District of Iowa.

This action was brought by Cromwell upon four bonds of the County of Sac, in the State of Iowa, each for $1,000. and four interest coupons attached to them, each for $100. The bonds were issued on the 1st of October, 1860, and made payable to bearer on the 1st of May, in the years 1868, 1869, 1870, and 1871, respectively, at the Metropolitan Bank, in the city of New York, with annual interest at the rate of ten per cent a year. The coupons in suit matured after the 1st of May, 1868. They were, at the option of the holder, payable at that bank, or receivable for county taxes at the office of the treasurer of Sac County.

As a defence, the county relied upon the estoppel of a judgment rendered in its favor in a prior action, brought by one Samuel C. Smith upon certain earlier maturing coupons upon the same bonds, accompanied with proof that Cromwell was, at the time, the owner of those coupons, and that the action was prosecuted for his benefit. It appears, from the findings in that action, that the County of Sac authorized, by a vote of its people, the issue of bonds to the amount of $10,000, for the erection of a court-house; that they were issued by the county judge, and delivered to one Meserey, with whom he had made a contract for the erection of the court-house; that immediately thereafter the contractor gave one of the bonds as a gratuity to the county judge; that a court-house was never constructed by the contractor or any other person pursuant to the contract; and that the plaintiff became the holder before maturity of the coupons in controversy, but it does not appear that he gave any value for them. Upon these findings the court below decided that the bonds were void as against the county, and accordingly gave judgment in its favor upon the coupons, holding that any infirmity of the bonds, by reason of illegality or fraud in their issue, necessarily affected the coupons attached to them. When that case was brought here on a writ of error, this court held that the facts disclosed by the findings were sufficient evidence of fraud and illegality in the inception of the bonds to call upon the holder to show, not only that he had received the coupons before maturity, but that he had given value for them; and, not having done so, the judgment was affirmed. *Smith v. Sac County*, 11 Wall. 139.

When the present case was first tried, the court below, holding that the judgment in the Smith case was conclusive against Cromwell, excluded proof of his receipt of the bonds and coupons in this suit before maturity for value, and gave judgment for the county. But when the case was brought here at the last term, this court held that the court below erred in excluding this proof; and that the point adjudged in the Smith case was only that the bonds were void as against the county in the hands of parties who had not thus acquired them before maturity and for value. The judgment was accordingly reversed,

and the cause remanded for a new trial.  *Cromwell* v. *County of Sac,* 94 U. S. 351.

Upon the second trial, the plaintiff proved that he had received, before their maturity, the bonds payable in 1870 and 1871, with coupons attached, and given value for them, without notice of any defence to them on the part of the county.

As to the bonds payable in 1868 and 1869, and coupons annexed, it appears that the plaintiff purchased them from one Clark on the 1st of April, 1873, after their maturity, for the consideration of a precedent debt due to him from Clark, amounting to $1,500; that they had previously been held by one Robinson, who had pledged them to a bank in Brooklyn as collateral security for a loan of money; that Clark purchased them of Robinson on the 20th of May, 1863, by paying this loan to the bank, then amounting to $1,192, and applying the excess of the amount of the bonds over the amount thus paid, in satisfaction of a precedent debt due to him by Robinson. To each of these bonds there were attached, at the time of Clark's purchase, the coupon due May 1, 1863, and all the unmatured coupons.  Robinson stated to Clark that the coupons previously matured had been paid, and that those due on the first of the month would be paid in a few days.  Clark had no notice at the time of any defence to the bonds, except such as may be imputed to him from the fact that one of the coupons attached to each of the bonds was then past due and unpaid.  There was a special verdict referring to the judgment in *Smith* v. *Sac County,* and showing the facts above stated as to the purchase of the bonds and coupons.

The law of New York allows interest at the rate of seven per cent a year, and any agreement for a greater rate avoids the whole contract.  The law of Iowa provides that the rate of interest shall be six per cent a year on money due by express contract, where a different rate is not stipulated, and on judgments and decrees for the payment of money; but that parties may agree in writing for the payment of interest not exceeding ten per cent a year, and that in such case any judgment or decree thereon shall draw interest at the rate expressed in the contract.

The main questions determined in the court below — such, at

least, as are deemed sufficiently important to be here noticed — were, in substance, these: 1st, Whether the judgment in *Smith v. Sac County* barred a recovery by Cromwell; 2d, whether as to the bonds maturing in 1868 and 1869, and the coupons annexed, he had the rights of a holder for value before dishonor, and without notice of any defence to them ; 3d, whether, if entitled to recover on the bonds and coupons, he should be allowed interest on them after maturity at the rate prescribed by the law of New York, or by that of Iowa ; and, 4th, whether the judgment should bear interest at the rate of ten, or only six, per cent a year.

The judges of the Circuit Court were divided in opinion on these questions. Conformably to the opinion of the presiding judge, who held that the bonds which matured in 1868 and 1869, and the coupons thereto attached, were, when purchased by Clark, dishonored paper, judgment, bearing six per cent interest per annum, was entered in favor of Cromwell, only for the amount mentioned in the bonds which matured in 1870 and 1871, and the coupons annexed, with interest on them at seven per cent a year after maturity. This judgment is now brought here for review, each party having sued out a writ of error.

*Mr. John N. Rogers* for Cromwell.

A purchaser for value of an unmatured negotiable bond, with an overdue coupon attached thereto, does not take it as dishonored paper, subject to all defences good against the original holder. *Bass v. Hewitt*, 20 Wis. 260; *National Bank of North America v. Kirby*, 108 Mass. 497; *Brooks v. Mitchell*, 9 Mee. & W. 15; *Goodman v. Simonds*, 20 How. 343 ; *Murray v. Lardner*, 2 Wall. 110; *Goodman v. Harvey*, 4 Ad. & E. 870 ; *Burnham v. Brown*, 23 Me. 400; *Oridge v. Sherborne*, 11 Mee. & W. 374; *Grafton Bank v. Doe*, 19 Vt. 463; *Ferry v. Ferry*, 2 Cush. (Mass.) 92; *United States v. Union Pacific Railroad Co.*, 91 U. S. 72; *Miller v. Race*, 1 Burr. 452; s. c. 1 Sm. L. C. 597 and notes.

If the rate of interest where the contract is made differs from that at the place of payment, the agreement of the parties for either rate is valid. *Miller v. Tiffany*, 1 Wall. 298; *Depau v. Humphreys*, 8 Mart. (La.) 1; *Chapman v. Robertson and*

*Others,* 6 Paige (N. Y.), 627; *Peck* v. *Mayo,* 14 Vt. 33; *Butters* v. *Olds et al.,* 11 Iowa, 1.

Under the Iowa statute which governs this case, the bonds after maturity bear interest at ten per cent per annum. *Hand* v. *Armstrong,* 18 Iowa, 324; *Lucas, Thompson, & Co.* v. *Pickel,* 20 id. 490. In the States where a similar statute prevails, the decisions are to the same effect. *Brannon* v. *Hursell,* 112 Mass. 63; *Marietta Iron Works* v. *Lottimer,* 25 Ohio St. 621; *Mouett* v. *Sturges,* id. 384; *Kilgore* v. *Powers,* 5 Blackf. (Ind.) 22; *Phinney* v. *Baldwin,* 16 Ill. 108; *Etnyre* v. *McDaniel,* 28 id. 201; *Spencer* v. *Maxfield,* 16 Wis. 178, 541; *Pruyn* v. *The City of Milwaukee,* 18 id. 367; *Kohler* v. *Smith,* 2 Cal. 597; *McLane* v. *Abrams,* 2 Nev. 199; *Hopkins* v. *Crittenden,* 10 Tex. 189. *Miller* v. *Burroughs,* 4 Johns. (N. Y.) Ch. 436; *Van Buren* v. *Van Gaasbeck,* 4 Cow. (N. Y.) 496.

The judgment and the bonds bear the same rate of interest. *Marietta Iron Works* v. *Lottimer, supra ;* *McLane* v. *Abrams, supra;* *Henry* v. *Ward,* 4 Ark. 150. But if it be otherwise, then the rate of six per cent applies only to so much of the judgment as was rendered on the coupons.

Cromwell, as the purchaser before their maturity of the bonds falling due in 1870 and 1871, and without notice of any defences which might impair their validity, and as the purchaser from a *bona fide* holder of the remaining bonds, who, before they matured, bought them without notice of any infirmity, is not limited to recovering the sum he paid therefor, but is entitled to the full amount due thereon, according to their tenor and effect. *Lay* v. *Wissman,* 36 Iowa, 305; *National Bank of Michigan* v. *Green,* 33 id. 140; *Park Bank* v. *Watson,* 42 N. Y. 490; *Fowler* v. *Strickland,* 107 Mass. 552.

*Mr. Galusha Parsons* for the county.

Negotiable paper is dishonored by any breach of the engagement which it imports. *McClure* v. *Township of Oxford,* 94 U. S. 429; *Vinton* v. *King,* 4 Allen (Mass.), 562; *Newell* v. *Gregg,* 51 Barb. (N. Y.) 263; *First National Bank of St. Paul* v. *County Commissioners,* 14 Minn. 77; *Arents* v. *Commonwealth,* 18 Gratt. (Va.) 750.

The past-due coupons attached to the bonds maturing in 1868 and 1869 were notice to Clark, the purchaser, that the

paper was dishonored, and the plaintiff did not acquire the other bonds in the ordinary or usual course of business. *Suidam* v. *Williamson et al.*, 20 How. 428; *Vermilye & Co.* v. *Adams Express Co.*, 21 Wall. 138; *McClure* v. *Township of Oxford*, *supra;* *Collins* v. *Gilbert*, 94 U. S. 753; *Shirts* v. *Overjoh*, 60 Mo. 305; *Davis* v. *Bartlett & St. John*, 12 Ohio St. 534.

The plaintiff, if entitled to recover, is limited to the amount paid by him, with interest. *Moore* v. *Ryder*, 65 N. Y. 441; *Cardwell* v. *Hicks*, 37 Barb. (N. Y.) 458; Story, Prom. Notes, sect. 191; Daniel, Neg. Ins., sect. 758; Chitty, Bills, 677; *Huff* v. *Wagner*, 63 Barb. (N. Y.) 229; *Todd* v. *Shelbourne*, 8 Hun (N. Y.), 510; *Campbell* v. *Nicholls*, 4 Vroom (N. J.), 81.

Interest on the bonds and coupons, after maturity and before judgment, was computed at an improper rate. *Brewster* v. *Wakefield*, 22 How. 118; *Young* v. *Godbe*, 15 Wall. 562; *Goddard* v. *Foster*, 17 id. 123; *Ward* v. *Morrison*, Car. & M. 367. The judgment bears interest at the true rate. *Hamer* v. *Kirkwood*, 25 Miss. 95; *Rogers* v. *Lee County*, 1 Dill. 529.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

It appears that, on the second trial of this case, the plaintiff proved that he had received two of the bonds in suit, — those payable in 1870 and 1871, — with coupons attached, before their maturity, and given value for them, without notice of any defence to them on the part of the county. Under our ruling, when the case was first here, there can be no doubt of his right to recover upon them. The only questions for our determination as respects them relate to the interest which they shall draw after maturity, and the interest which the judgment shall bear. These questions we shall hereafter consider.

As to the other two bonds in suit, — those payable in 1868 and 1869, — and coupons annexed, it appears that when Clark purchased them, on the 20th of May, 1863, there were attached to each the coupon due on the first of that month and all subsequent unmatured coupons. His vendor stated to him that the coupons previously matured had been paid, and that those due on the first of the month would be paid in a few days. He

had no notice at the time of any defence to the bonds, except such as may be imputed to him from the fact that one of the coupons attached to each of the bonds was then past due and unpaid.   And the principal question for our determination is, whether, this fact existing, the plaintiff had, as to these bonds, the right of a holder for value before dishonor, without notice of any defences by the county ; or, as stated by counsel, whether this fact rendered the bonds themselves, and all subsequently maturing coupons, dishonored paper, and subjected them, in the hands of Clark and the plaintiff succeeding to his rights, to all defences good against the original holder.   The judges of the Circuit Court were divided in opinion upon this question ; and, as in such cases the opinion of the presiding judge prevails, the decision of the court was against the plaintiff, and he was held to have taken the bonds and subsequent coupons as dishonored paper, subject to all the infirmities which could be urged against them in the hands of the original holder.   In this decision we think the court erred.   The special verdict does not show that the coupons overdue had been presented to the Metropolitan Bank for payment, and their payment refused.   Assuming that such was the fact, the case is not changed.   The non-payment of an instalment of interest when due could not affect the negotiability of the bonds or of the subsequent coupons.   Until their maturity, a purchaser for value, without notice of their invalidity as between antecedent parties, would take them discharged from all infirmities.   The non-payment of the instalment of interest represented by the coupons due at the commencement of the month in which the purchase was made by Clark was a slight circumstance, and, taken in connection with the fact that previous coupons had been paid, was entirely insufficient to excite suspicion even of any illegality or irregularity in the issue of the bonds.   Obligations of municipalities in the form of those in suit here are placed, by numerous decisions of this court, on the footing of negotiable paper.   They are transferable by delivery, and, when issued by competent authority, pass into the hands of a *bona fide* purchaser for value before maturity, freed from any infirmity in their origin.   Whatever fraud the officers authorized to issue them may have committed in disposing of them, or however entire may have been the fail-

ure of the consideration promised by parties receiving them, these circumstances will not affect the title of subsequent *bona fide* purchasers for value before maturity or the liability of the municipalities. As with other negotiable paper, mere suspicion that there may be a defect of title in its holder, or knowledge of circumstances which would excite suspicion as to his title in the mind of a prudent man, is not sufficient to impair the title of the purchaser. That result will only follow where there has been bad faith on his part. Such is the decision of this court, and substantially its language, in the case of *Murray* v. *Lander*, reported in the 2d of Wallace, where the leading authorities on the subject are considered.

The interest stipulated was a mere incident of the debt. The holder of the bond had his option to insist upon its payment when due, or to allow it to run until the maturity of the bond; that is, until the principal was payable. Many causes may have existed for a failure to meet the interest as it matured, entirely independent of the question of the validity of the bonds in their inception. The payment of previous instalments of interest would seem to suggest that only causes of a temporary nature had prevented their continued payment. If no instalment had been paid, and several were past due, there might have been greater reason for hesitation on the part of the purchaser to take the paper, and suspicions might have been excited that something was wrong in issuing it. All that we now decide is, that the simple fact that an instalment of interest is overdue and unpaid, disconnected from other facts, is not sufficient to affect the position of one taking the bonds and subsequent coupons before their maturity for value as a *bona fide* purchaser. *National Bank of North America* v. *Kirby*, 108 Mass. 497. To hold otherwise would throw discredit upon a large class of securities issued by municipal and private corporations, having years to run, with interest payable annually or semi-annually. Temporary financial pressure, the falling off of expected revenues or income, and many other causes having no connection with the original validity of such instruments, have heretofore, in many instances, prevented a punctual payment of every instalment of interest on them as it matured; and similar causes may be expected to prevent a punctual payment

of interest in many instances hereafter.   To hold that a failure
to meet the interest as it matures renders them, though they
may have years to run, and all subsequent coupons dishonored
paper, subject to all defences good against the original holders,
would greatly impair the currency and credit of such securities,
and correspondingly diminish their value.   We are of opinion,
therefore, that Clark took the two bonds in suit and the subse-
quently maturing coupons as a *bona fide* purchaser, and as such
was entitled to recover upon them, whatever may have been
their original infirmity.   The plaintiff, Cromwell, succeeded by
his purchase from Clark to all Clark's rights, and can enforce
them to the same extent.   Nor does it matter whether, in the
previous action against the county by Smith, who represented
him, he was informed of the invalidity of the bonds as against
the county, and knew, when he purchased, the circumstances
attending their issue, or whether he was made acquainted with
them in any other way.   The rule has been too long settled to
be questioned now, that, whenever negotiable paper has passed
into the hands of a party unaffected by previous infirmities, its
character as an available security is established, and its holder
can transfer it to others with the like immunity.   His own title
and right would be impaired if any restrictions were placed
upon his power of disposition.   This doctrine, as well as the
one which protects the purchaser without notice, says Story,
"is indispensable to the security and circulation of negotiable
instruments, and it is founded on the most comprehensive and
liberal principles of public policy."   Story, Prom. Notes, sect. 191.
The only exceptions to this doctrine are those where the paper
is absolutely void, as when issued by parties having no author-
ity to contract; or its circulation is forbidden by law from the
illegality of its consideration, as when made upon a gambling
or usurious transaction.

The plaintiff, therefore, holds the bonds and the subsequent
coupons as his vendor held them, freed from all infirmities at-
tending their original issue.   Nor is he limited in his recovery
upon them, or upon the other two bonds, as contended by coun-
sel for the county, to the amount he paid his vendor.   Clark
had given full value for those he purchased, and could have re-
covered their amount from the county, and his right passed to

his vendee. But, independently of the fact of such full payment, we are of opinion that a purchaser of a negotiable security before maturity, in cases where he is not personally chargeable· with fraud, is entitled to recover its full amount against its maker, though he may have paid less than its par value, whatever may have been its original infirmity. We are aware of numerous decisions in conflict with this view of the law; but we think the sounder rule, and the one in consonance with the common understanding and usage of commerce, is that the purchaser, at whatever price, takes the benefit of the entire obligation of the maker. Public securities, and those of private corporations, are constantly fluctuating in price in the market, one day being above par and the next below it, and often passing within short periods from one-half of their nominal to their full value. Indeed, all sales of such securities are made with reference to prices current in the market, and not with reference to their par value. It would introduce, therefore, inconceivable confusion if *bona fide* purchasers in the market were restricted in their claims upon such securities to the sums they had paid for them. This rule in no respect impinges upon the doctrine that one who makes only a loan upon such paper, or takes it as collateral security for a precedent debt, may be limited in his recovery to the amount advanced or secured. *Stoddard* v. *Kimball*, 6 Cush. (Mass.) 469; *Allaire* v. *Hartshorne*, 1 Zab. 665; *Williams* v. *Smith*, 2 Hill (N. Y.), 301; *Chicopee Bank* v. *Chapin*, 8 Met. (Mass.) 40; *Lay* v. *Wissman*, 36 Iowa, 305.

The only questions remaining, which we deem of sufficient importance to require consideration, relate to the interest which the bonds and coupons in suit shall draw after their maturity, and the interest which the judgment shall bear. The statute of Iowa on this subject provides that the rate of interest shall be six per cent a year on money due by express contract, unless a different rate be stipulated, and on judgments and decrees for the payment of money in such cases; but that parties may agree in writing for any rate of interest not exceeding ten per cent a year, and that any judgment or decree thereon shall draw the rate of interest expressed in the contract.

The bonds by their terms, as already stated, bear interest at

the rate of ten per cent until maturity.  The plaintiff claims that they should draw the same rate of interest after maturity, and that, under the statute of Iowa, the judgment should also bear ten per cent interest.  The court below allowed only seven per cent on the bonds after maturity, that being the rate in New York, where the bonds were payable, and only six per cent on the judgment.  In this ruling, we think the court erred.  By the settled law of Iowa, as established by repeated decisions of her highest court, contracts drawing a specified rate of interest before maturity draw the same rate of interest afterwards.  *Hand* v. *Armstrong*, 18 Iowa, 324; *Lucas, Thompson, & Co.* v. *Pickel*, 20 id. 490.  A like decision has been made in several of the States upon similar statutes.  *Brannon* v. *Hursell*, 112 Mass. 63; *Marietta Iron Works* v. *Lottimer*, 25 Ohio St. 621; *Monett* v. *Sturges*, id. 384; *Kilgore* v. *Powers*, 5 Blackf. (Ind.) 22; *Phinney* v. *Baldwin*, 16 Ill. 108; *Etnyre* v. *McDaniel*, 28 id. 201; *Spencer* v. *Maxfield*, 16 Wis. 178, 541; *Pruyn* v. *The City of Milwaukee*, 18 id. 367; *Kohler* v. *Smith*, 2 Cal. 597; *McLane* v. *Abrams*, 2 Nev. 199; *Hopkins* v. *Crittenden*, 10 Tex. 189.  There are, however, conflicting decisions; but the preponderance of opinion is in favor of the doctrine that the stipulated rate of interest attends the contract until it is merged in the judgment.  *Pearce* v. *Hennessey*, 10 R. I. 223; *Lash* v. *Lambert*, 15 Minn. 416; *Searle and Others* v. *Adams*, 3 Kan. 515; *Kitchen et al.* v. *The Branch Bank at Mobile*, 14 Ala. 233.  The statutory rate of six per cent in Iowa only applies in the absence of a different stipulated rate.  As the judgment in case of a stipulated interest in the contract must bear the same rate, it could not have been intended that a different rate should be allowed between the maturity of the contract and the entry of the judgment.

The case of *Brewster* v. *Wakefield* (22 How. 118) is cited against this view.  That case came from a territorial court, and arose under a statute which allowed parties to agree upon any rate of interest, however exorbitant, and only prescribed seven per cent in the absence of such agreement.  This court, bound by no adjudication of the territorial court, and looking with disfavor upon the devouring character of the interest stipulated in that case, gave a strict construction to the contract of the parties.

" The law of Minnesota " (then a Territory), said the court, " has fixed seven per cent per annum as a reasonable and fair compensation for the use of money ; and when a party desires to extort, from the necessities of a borrower, more than three times as much as the legislature deems reasonable and just, he must take care that the contract is so written in plain and unambiguous terms ; for with such a claim he must stand on his bond." The statute of Iowa only allows the parties by their agreement to stipulate for interest up to ten per cent a year, — a rate which has not been deemed extravagant or unreasonable in any of the States lying west of the Mississippi. Be that as it may, the question is one of local law under a statute of a State, and the construction given by its tribunals should conclude us.

The position of counsel, that because the rate of interest in New York, where the bonds were payable, is only seven per cent, the bonds can only draw that rate after maturity, is not tenable. When the rate of interest at the place of contract differs from the rate at the place of payment, the parties may contract for either rate, and the contract will govern. *Miller* v. *Tiffany*, 1 Wall. 298 ; *Depau* v. *Humphreys*, 8 Mart. (La.) 1 ; *Chapman* v. *Robertson*, 6 Paige (N. Y.), 627, 634 ; *Peck* v. *Mayo*, 14 Vt. 33 ; *Butters* v. *Olds et al.*, 11 Iowa, 1. The bonds were made with reference to the law of Iowa as to interest, and not to that of New York, where interest above seven per cent is deemed usurious and avoids the whole contract. The obligor is a municipal corporation of Iowa, the bonds were deliverable in that State, and proceedings to enforce their payment could only be had in courts sitting there.

With reference to interest on the coupons after their maturity, that can be allowed only at the rate of six per cent under the law of Iowa. See, as to coupons drawing interest, *Aurōra City* v. *West*, 7 Wall. 82.

It follows, from the views expressed, that the plaintiff was entitled to judgment for the amount of the four bonds and the coupons in suit, with interest on the bonds after maturity until judgment at the rate of ten per cent a year, and with interest on the coupons after their maturity until judgment at the rate of six per cent a year ; and that the judgment should draw

interest at the rate of ten per cent a year upon the amount found due on the bonds, and at the rate of six per cent a year upon the amount found due on the coupons, including the costs of the action.

The judgment of the Circuit Court must, therefore, be reversed, and the cause remanded with directions to enter a judgment for the plaintiff in conformity with this opinion; and it is

*So ordered.*