McILWAINE et al. v. ELLINGTON et al.

(Circuit Court of Appeals, Fourth Circuit.  November 5, 1901.)

No. 351.

1. BUILDING AND LOAN ASSOCIATIONS — CONTRACTS WITH BORROWING STOCK-
HOLDERS—LAW GOVERNING.
    Where the bond given by a borrowing stockholder in a building and
    loan association is dated and made payable at the home office of the
    association, and it is expressly declared therein that the contract shall
    be governed and construed by the laws of the state where such home
    office is situated, such provision being made to secure uniformity in the
    contracts of all stockholders, and not for the purpose of evading the
    usury laws of other states, the contract is solvable under such laws, al-
    though the security is situated in another state, where the stockholder
    resides.

2. SAME—INSOLVENCY—RULE OF SETTLEMENT WITH BORROWING STOCKHOLDER.
    Where the contract between a building and loan association and a bor-
    rowing stockholder is governed by the law of the state of the associa-
    tion's domicile, under which it is valid, such law determines the rights
    of the parties and the amount due on the contract in a suit in a federal
    court to foreclose the mortgage after the association has become insol-
    vent, and its affairs are being wound up by a court of equity in its home
    state, notwithstanding the laws and decisions of the state in which the
    suit is brought, and where the mortgaged property is situated, provide a
    different rule, and the courts of the state refuse to apply any other to
    suits affecting property therein, in the absence of any statute declaring
    such contracts against the public policy of the state, and nonenforceable
    against mortgaged land therein situated.

3. SAME—COLLECTION OF ASSETS BY RECEIVER.
    The receiver of an insolvent building and loan association appointed
    in a proceeding to wind up its affairs is not entitled, in a suit to fore-
    close a mortgage given by a borrowing stockholder, to an order author-
    izing him to sell the stock of the defendant, also pledged as security for
    the loan, the purpose of the proceeding in which he was appointed being
    to pay off such stock by an equitable distribution of the assets.

Appeal from the Circuit Court of the United States for the West-
ern District of North Carolina.

The Covenant Building & Loan Association is a Tennessee corporation with
its principal office at Knoxville, Tenn.  Having become insolvent, a bill
was filed by stockholders and creditors in the circuit court of the United
States for the Northern division of the Eastern district of Tennessee, sitting
at Knoxville, and the complainants in this case were appointed receivers of
said association March 1, 1897, to wind up its affairs, and ratably distribute
its assets.  Subsequently the same complainants filed an ancillary bill in
the circuit court of the United States for the Western district of North
Carolina, sitting at Greensboro, in which cause said court took ancillary juris-
diction of the matters pending under the original bill in the court in Ten-
nessee, and the complainants in this suit were appointed receivers of the
assets and effects of the said association within the state of North Carolina.
Among the assets and effects of said association deposited in its home office
in Knoxville, Tenn., which came to the hands of said receivers, was a sealed
note or bond for $1,000, dated January 9, 1891, executed by the defendants,
W. W. Ellington and Laura Ellington, his wife, secured by a mortgage of a
lot of ground in Greensboro, N. C., belonging to said Laura Ellington.  At the
time of the application for the loan of $1,000 secured by said bond and mort-
gage, the said Laura Ellington was the owner of 10 shares of the fourth series
stock of said association, which had been issued to her April 28, 1890, which
said stock she transferred to the association as collateral for said loan.  By
the note Ellington and wife promised on or before nine years from date to

pay to the Covenant Building & Loan Association, at its home office in Knoxville, Tenn., $1,000, together with a premium of $5 per month, and interest at 6 per cent. per annum, payable monthly. The note further read as follows: "This note is for money borrowed on ten shares of the fourth series stock of said association, and is secured by a mortgage of even date herewith upon a lot of land in the county of Guilford and state of North Carolina. Now, if we pay promptly the monthly interest on said sum of $1,000, and the monthly premium of $5.00 bid by us for said loan, and the monthly payment on said shares of stock, and any fines assessed under the rules of said association, and the taxes, * * * and the premium necessary to keep the house on said lot insured * * * until the said stock becomes fully paid in and of the value of $100 per share, then it is understood that upon the surrender of said stock to said association this note shall be deemed fully paid and canceled. But if we fail to pay promptly, when due and payable, the said taxes and insurance premiums, or default in payment of said monthly interest, fines, monthly premiums, and monthly payments on said stock for a period of six months after the same are due, or any installment thereof is due, then, at the option of said association, the whole indebtedness evidenced by this obligation (including the taxes and insurance premiums due or paid by said association) shall at once become and be due and collectible, and a foreclosure of said mortgage in the manner therein provided may be had. It is further understood that this note is made with reference to and under the laws of the state of Tennessee, and, if paid before seven years from its date, such rebate from the premium included therein will be allowed as the board of directors of said association shall deem equitable." The mortgage, in its conditions, followed the terms of the note, with the usual provisions for a foreclosure sale in case of default. Default having been made in the payment of the balance claimed by the receivers as due under said note and mortgage, the said receivers prayed leave of the said circuit court of the United States for the Western district of North Carolina to file a foreclosure bill against the said W. W. and Laura Ellington in said court, which leave was granted, and thereupon this bill was filed by McIllwaine and Ashmore, citizens of Tennessee, against said Ellington and wife, citizens of North Carolina, praying that account be taken of the amount due under said note and mortgage, which the complainants claimed amounted to $592.50, and for a sale in default of payment.

The complainants, in their said foreclosure bill, averred as follows: "(14) That, as your orators are advised and believe, and so aver, the insolvency of the said association, and the appointment of the said receivers as aforesaid, has caused all the bonds and mortgages held by it and owing to it, including the bond and mortgage aforesaid, to mature, and become immediately payable. (15) That the contracts were made payable and solvable in the state of Tennessee, at the home office of said corporation, a Tennessee corporation. That they were made with express reference to the laws of Tennessee, and that under said laws, as your orators are advised and believe, and so aver, that they were and are valid, legal, and binding, and free from any and all illegality. (16) That there has been paid to the said association upon the said stock of the defendant the sum of $462. That there has been paid as interest upon said loan $359.50, and as premiums thereon $359.50. (17) That as your orators are advised and believe, and so aver, in view of the insolvency of said association, the proper mode of settlement with the defendants as borrowers is that which has been adopted by the circuit court of the United States for the Northern division of the Eastern district of Tennessee in the principal cause, and by this honorable court in the cause of I. S. Lauer et. al. vs. The Covenant Building and Loan Association, by decree dated May 3, 1897, as the rule of settlement between the said receivers and all borrowers from said association. That a copy of said decree, marked 'Exhibit C,' is hereto attached, and made a part thereof. (18) That, in accordance with this general rule, the said defendants should be charged with, and required to pay, the amount actually borrowed by them from the said association, together with simple interest thereon at the rate of six per cent. per annum from the date of the loan. That they should be credited on said bond with the interest and all premiums paid to the associa-

tion as of the dates of the payments of such interest and premiums, the calculation being made upon the principle of partial payments. (19) That in arriving at the amount due from said defendants there should not be credited upon said mortgage debt the payment of any dues upon stock, and they should not be regarded as partial payments upon said indebtedness. That said defendants should be treated, as to the payment of dues made upon stock, the same as investing stockholders. That, after all liabilities of defendant herein and all other borrowers from said association shall have been paid, the fund ought to be distributed pro rata among the borrowing and nonborrowing stockholders upon the basis of the amount paid by them, respectively, as dues upon stock. (20) That all questions as to the amounts of monthly dues upon the said stock, and their application, and the rights and liabilities of the defendant herein as a stockholder should be reserved until the final settlement of the affairs of said association in the hands of the said receivers and under the direction of the circuit court of the United States for the Northern division of the Eastern district of Tennessee and for the Western district of North Carolina, when the value of the stock, as depending upon the monthly dues paid in upon it, and the losses of the association, the risk of which was assumed by the said defendant and other stockholders, shall be determined, and the rights of the said defendant in the premises and of all other stockholders shall be ascertained and declared by the said court, or else your orators, receivers as aforesaid, should be authorized and empowered by the court, for the purpose of making final settlement and compromise with the defendants herein, and with all other borrowers, to allow such borrowers credit upon the balance found due from them as said borrowers the value of their stock, or stock payments, after making a careful and conservative estimate of such value, taking into consideration the conditions and surroundings of the assets in their hands and making due allowance for all probable losses and depreciations in value, as well as probable expenses to be incurred in the collection of the assets and administration of the trusts."

The rule of settlement established and decreed by the circuit court of the United States for the Northern division of the Eastern district of Tennessee, a copy of which decree was "Exhibit C," and which was adopted by the circuit court of the United States for the Western district of North Carolina by a special order signed June 19, 1897, as the general rule of settlement for all settlements by the receivers with the borrowers in the Western district of North Carolina, was, in substance, as follows: (1) That the borrower be charged with the amount actually borrowed, together with 6 per cent. interest from the date of the loan. (2) That the borrower be credited upon the loan with the interest and premium paid as of the dates of payment, the calculation to be made upon the principle of partial payments. (3) That the borrower be not credited with the payment of dues upon stock, they not to be regarded as partial payments upon the indebtedness. (4) That the borrower be treated, as to the payments of dues upon stock, the same as investing stockholders; the fund for distribution to be distributed pro rata among borrowers and nonborrowing stockholders upon the basis of the amount paid by them, respectively, as dues upon stock. The receivers were further authorized, in making settlements with borrowers, for the purpose of settlement and compromise to allow borrowers credit for the estimated value of their stock payments, after making a careful estimate of such value, allowing for all probable losses and depreciations and the probable expenses to be incurred in collecting the assets and administering the trusts.

The defendants, Ellington and wife, answered the bill. They alleged that the note or bond and mortgage were made and executed in the state of North Carolina, and not in Tennessee, and were North Carolina contracts, and to be construed, and effect to be given them, according to the laws of North Carolina; that the association had a local board and a secretary in Greensboro, N. C., and that the contract was made payable in Tennessee to avoid the usury law in force in North Carolina; that the 10 shares of stock were issued to said Laura Ellington upon the understanding that, if she subscribed for the stock, she was to have a loan of $1,000 at 6 per cent., which was the highest legal rate in North Carolina, and that the money borrowed was to

be expended in building a house upon the mortgaged land; that said contracts are not legal and binding, but were a scheme to obtain usurious and illegal interest, and are void so far as they exact a greater rate of interest than 6 per cent.; and that all payments made by her, whether as interest, premium, or dues, ought to be credited on said loan, and that upon a legal computation they have fully repaid said loan, with legal interest, and have in fact overpaid said debt.

Testimony was taken to show that by the statute law of Tennessee, and by the construction put upon those statutes by the courts of Tennessee, the foregoing rule of settlement adopted by the United States circuit court at Knoxville was the rule of law established by the state courts of Tennessee applicable in that state to settlements between insolvent building and loan associations and borrowing stockholders; also to prove that upon a careful estimate of the value of the stock payments, allowing for losses and expenses, 40 per cent. was found to be a fair estimate of the value of the stock to be credited on loans of borrowing shareholders. The cause came to a hearing on the bill, answer, and testimony, and the circuit court, by its decree of December 8, 1899, held that the monthly payments for stock dues, to wit. $6, and the monthly payment of $5 for interest and $5 for premium, making $16 per month, were to be credited on the loan, and that the defendant had overpaid the amount of the loan and interest $9.42. The court further decreed that the defendants, as stockholders of the association, were liable to the receivers for their share of the losses of the association, and that the mortgage should not be released, but should remain as security for the defendants' pro rata share of said losses and deficiencies; and charged the costs of the case against the defendants, Ellington and wife. From this decree the receivers have appealed. They assign as error that the court should have decreed that the receivers were entitled to recover the amount claimed in their bill of complaint, and were entitled to foreclose the mortgage if the amount was not paid; that the court erred in allowing the stock dues to be credited, and in not decreeing that defendants were not entitled to credit on the mortgage debt for the stock dues paid by them; that, the contract being a Tennessee contract, the court erred in not holding that the rule of settlement established by the laws and decisions of Tennessee should be followed; that the court erred in not decreeing that the stock, being also pledged for the debt, should be sold to meet any deficiency caused by the land not bringing the amount of the debt, costs, and expenses of sale.

John W. Hinsdale, for appellants.

John N. Wilson (Levi M. Scott, on the brief), for appellees.

Before GOFF, Circuit Judge, and MORRIS and WADDILL, District Judges.

MORRIS, District Judge (after stating the facts). The learned circuit judge had questions identical with those in this case before him in the case of McIlwaine v. Isley, and, having very carefully considered them, he announced his conclusions in an opinion which is reported in 96 Fed. 62, and in the supplemental opinion in the same volume at page 775. Having considered all the facts of Isley's Case, which in essentials did not differ from the present case, he found that by express terms, and by the explicit understanding and intention of the parties as expressed in the note, the subscription to stock and the loan were Tennessee contracts; that they were consummated at Knoxville, in that state, and all dues and payments were required to be paid there; and that it was not so made a Tennessee contract to evade the usury laws of North Carolina, but for the reason that, the association having borrowing and nonborrowing shareholders in many other states, it was necessary

that it should have one uniform rule of construction of its contract, in order to insure equality, uniformity, and mutuality among all its members. We fully agree with the learned circuit judge that the contract in this case was a Tennessee contract. The circuit judge further found that under the rule of law of Tennessee the contract in this case was legal and valid, and free from the imputation of usury. Had the association still been a solvent and going concern, the mortgagors would have been required to settle with it according to the terms of their contract. The Tennessee law was proved in the case by the testimony of Tennessee lawyers familiar with the rulings of the courts of that state, and the circuit judge also referred to the decisions of the following Tennessee cases, which fully establish these rules: McCauley v. Association, 97 Tenn. 421, 37 S. W. 212, 35 L. R. A. 244, 56 Am. St. Rep. 813; Post v. Association, 97 Tenn. 408, 37 S. W. 216, 34 L. R. A. 201; Rogers v. Hargo, 92 Tenn. 35, 20 S. W. 430; Hughes v. Association (Tenn. Ch. App.) 46 S. W. 362.

The circuit judge further found that by the laws of North Carolina —the state in which the mortgaged land was situated, and in which this proceeding to foreclosure was prosecuted—the rule was different, and that by the decisions of the supreme court of North Carolina such a contract would be held unconscionable and usurious, and not to be enforced, and, if the association were solvent, the rule of settlement under the North Carolina decisions would be to charge the borrower with the sum loaned and interest from the date of the loan, and to credit him with all sums paid as interest, premium, and stock dues as partial payments. Meroney v. Association, 116 N. C. 882, 21 S. E. 924, 47 Am. St. Rep. 841; Rowland v. Association, 116 N. C. 878, 22 S. E. 8. The rule of settlement between the association and its borrowing members would be very different under the North Carolina law from that which would be the rule if the Tennessee law governed. While this association, if solvent, would have been entitled to have collected a considerable sum from the defendants had the account between them been stated in accordance with the Tennessee law, the defendants would have overpaid by $9.42 the amount which the association could have claimed from them if the relations between them were governed by the North Carolina laws. This association is, however, not solvent, but is insolvent. The rule of settlement between the borrowing members and the association is in both Tennessee and North Carolina different, when the association has become insolvent, from that which prevails in each state when it is solvent. In Tennessee, when the association has become insolvent, its receivers are by the law of Tennessee, in settling with the borrowing members, permitted to charge them with the amount loaned and interest thereon at 6 per cent., and to give them credit for all payments of interest and premium as partial payments, but not to credit them with the monthly payments for stock dues or membership fees, as to which they are treated as other stockholders, and are entitled to only their pro rata share in the distribution of the corporate assets. See Tennessee cases heretofore cited. In North Carolina, as the circuit judge has held, borrowing stockholders of an insolvent

association, in addition to the amount which they would owe the association were it solvent, are liable to contribute their proper proportion of the losses chargeable to their share of advanced stock for the benefit of the other members of the association. Meares v. Davis, 121 N. C. 126, 28 S. E. 188; Thompson v. Association, 120 N. C. 420, 27 S. E. 118; Williams v. Maxwell, 123 N. C. 586, 31 S. E. 821. It thus appears that, while the rule of settlement between an insolvent association and its borrowing shareholders is stated in different language by the courts of Tennessee from that which is used by the courts of North Carolina, yet those rules are in their practical results hardly distinguishable. The question as to which rule should govern, however, was strenuously contested before the circuit judge, and subsequently on appeal before this court. The circuit judge, having found the stock subscription and loan to be a Tennessee contract, then considered the question whether, as the performance of the contract was secured by a mortgage of land in North Carolina, and the object of this suit was a foreclosure and sale of the land because of default, the circuit court was controlled by the North Carolina decisions for the purpose of such a proceeding in North Carolina, and was bound to treat the contract as a North Carolina court would treat it. As to this question the circuit judge held that the gist of the action was the mortgage of land in North Carolina, and as the North Carolina courts had decided that such a mortgage to secure a loan of money under such a contract, when the money was to be used in North Carolina on the mortgaged land, could not be enforced except to the extent of requiring the repayment of the principal and simple interest at 6 per cent., crediting all payments as partial payments on the loan, the circuit court of the United States sitting in that state was controlled by those decisions as in the nature of a rule of property. The circuit judge accordingly held that the North Carolina rule of settlement should be applied, and so decreed. The appellants assigned this as error.

In accordance with an accounting under the North Carolina rule, the circuit judge decreed that the defendants were found to have overpaid the amount with which they were chargeable by the sum of $9.42, but that they were still liable for their proper proportion of the losses chargeable to the shares of advanced stock for the benefit of the other members of the association, and that the defendants were not entitled to have the mortgage released, but that it should stand as security for the ultimate payment by the defendants of their pro rata contribution to such losses and deficiencies. We do not agree with the learned circuit judge in his conclusion that, because this was a suit to foreclose a mortgage of land in North Carolina, given to secure the performance of the Tennessee contract, the North Carolina rule for the construction of the contract must prevail. When, by the rule applicable to the construction of the contract, the amount due thereunder is ascertained, then the mortgage stands as security for the payment of that amount. As to the proceedings to foreclose the mortgage and the manner and terms of sale, the terms of redemption of the land from the sale, and similar matters, the laws of the state where the land lies do control. Brine

v. Insurance Co., 96 U. S. 627, 24 L. Ed. 858; Insurance Co. v. Cushman, 108 U. S. 51, 2 Sup. Ct. 236, 27 L. Ed. 648. But the present question is not with regard to the proceedings to obtain payment by a sale of the land, but the question is whether the amount due under this contract, which is valid by the Tennessee law, is to be determined by that law, or whether the contract is to be treated as usurious, as it is held to be under the decision of the North Carolina courts. The weight of authority would seem to be that, if the contract is valid by the laws of the state where made, the amount due under it is to be ascertained by those laws, and the security is liable for that amount, although situated in another state. It is to be noticed that there is no legislation of North Carolina declaring such a contract as this against the public policy of North Carolina, and nonenforceable against mortgaged land there situated.

In Bendey v. Townsend, 109 U. S. 665–668, 3 Sup. Ct. 482–484, 27 L. Ed. 1065, 1066, speaking of a decree for foreclosure of a mortgage of land in Michigan, the supreme court said:

"The land is in Michigan, the notes and mortgage were made and payable in Michigan, and by the law of Michigan, as settled by repeated and uniform decisions of the supreme court of that state, the stipulation to pay an attorney's or solicitor's fee of a fixed sum is unlawful and void, and cannot be enforced in foreclosure, either under the statutes of the state or by a bill in equity. * * * Upon such a question affecting the validity and effect of a contract made and to be performed in Michigan concerning land in Michigan, the laws of the state would govern in proceedings to enforce the contract in a federal court held within the state."

In Bedford v. Association, 181 U. S. 227–242, 21 Sup. Ct. 597–602, 45 L. Ed. 834–845, which was a foreclosure suit brought in the circuit court of the United States for the Western district of Tennessee to enforce a mortgage of land in Tennessee, executed to a New York corporation, among the other defenses it was urged that the contract was usurious, and as to that defense the supreme court of the United States said:

"Besides, the transactions were not usurious under the laws of New York, where the notes were payable. * * * Therefore the principle expressed in Miller v. Tiffany, 1 Wall. 298, 17 L. Ed. 540, applies. It was said in that case: 'The general principle in relation to contracts made in one place to be performed in another is well settled. They are to be governed by the law of the place of performance, and, if the interest allowed by the law of the place of performance is higher than that permitted at the place of contract, the parties may stipulate for the higher interest without incurring the penalties of usury. The converse of this proposition is also well settled. If the rate be higher at the place of the contract than at the place of performance, the parties may lawfully contract in that case also for the higher rate.' See, also, Andrews v. Pond, 13 Pet. 78, 10 L. Ed. 61; Junction R. Co. v. Bank of Ashland, 12 Wall. 226, 20 L. Ed. 385; Scotland Co. v. Hill, 132 U. S. 107, 10 Sup. Ct. 26, 33 L. Ed. 261; Cromwell v. Sac Co., 96 U. S. 57, 24 L. Ed. 681; Cockle v. Flack, 93 U. S. 344, 23 L. Ed. 949."

In Loan Co. v. Cannon, 96 Tenn. 599, 36 S. W. 386, 33 L. R. A. 112, 54 Am. St. Rep. 858, a note secured by mortgage of land in Tennessee was given to a Minnesota building association, and made payable in Minneapolis. The court said:

"The second assignment of error is that the note and mortgage were both usurious on their face and nonenforceable. As already stated, the note

stipulates on its face to pay five per cent. interest per annum and five per cent. premium per annum at the office of the company at Minneapolis, Minnesota. This contract is a Minnesota contract, and is expressly authorized by the charter of the company and the laws of that state, which have been distinctly proved and appear on the record."

Another case in point is Association v. Rector, 38 C. C. A. 686, 98 Fed. 171. This was an appeal from the circuit court for the Eastern district of Arkansas in a suit to foreclose a mortgage of land in Arkansas. The appellant was an Alabama corporation. The circuit court of appeals for the Eighth circuit said:

"Is this contract valid under the laws of Alabama? This is the only question in the case. The contract was made and was to be performed in the state of Alabama, and its validity and effect must be determined by the laws of that state. * * * The validity and legal effect of this contract must be tested by the laws of Alabama and the decisions of the supreme court of that state construing those laws, and not by the laws and decisions of other states. Applying that test, we find that under the laws of Alabama, as construed by the supreme court of that state, the contract in suit is not usurious."

The decree of the circuit court for Arkansas was reversed, and the case remanded, with instructions to render a decree for the sum found due, treating the contract as valid, and not usurious.

Another case is Andruss v. Association, 36 C. C. A. 336, 94 Fed. 575. This was a bill to foreclose a mortgage of land in Texas, executed to a building and loan association incorporated in New York. The circuit court of appeals for the Fifth circuit held that, under the laws of the state of New York, the contract was valid, and not usurious, and that the mortgage of land in Texas was enforceable according to the terms of the contract.

The case of MacMurray v. Gosney, 106 Fed. 11, in the circuit court of the United States for the Western district of Pennsylvania, was a suit by the receivers to foreclose a building association mortgage given to an Illinois corporation on land in Pennsylvania. Circuit Judge Acheson applied the rule of settlement adopted by the United States circuit court for the Southern district of Illinois, and refused to apply the rule, more favorable to the borrower, established by the supreme court of Pennsylvania in like cases.

These decisions in building and loan association cases, several of them decided since the ruling in the present case now appealed from, appear to us, in the absence of legislation by the state of North Carolina controlling the enforcement of a mortgage of land in that state given to a foreign building and loan association, to establish the rule that such a mortgage is enforceable for the amount of the contract secured, provided it is a contract to be performed in the foreign state, and to the extent that it is lawful under its laws. The circuit judge, while not applying the rule of settlement in this case established by the Tennessee decisions, did, by his final decree, adopt the method of settlement sanctioned by the decisions of the supreme court of North Carolina by the cases hereinbefore cited, by which the borrowing stockholder is required to contribute to the losses in respect to his advanced shares. In accordance with this method of settlement, it was decreed that Ellington and wife were

liable as stockholders for their pro rata share of the losses of the Covenant Building & Loan Association, and that the mortgage should not be released, but that their pro rata share of the losses and deficiencies should be secured by said mortgage, and the mortgaged land remain charged with that liability. This although not strictly the rule of settlement adopted by the court of primary jurisdiction in this receivership, which we hold to be the proper rule, yet it is for practical results hardly distinguishable and quite equitable, and was not appealed from by the defendants, and therefore we do not think the appellees should be charged with the costs of this appeal.

The further contention of the appellants that in a proceeding like the present one to wind up and distribute the assets of an insolvent building and loan association the pledged stock should be decreed to be sold in the event that the land should not bring sufficient to pay the borrowers' debt, is without merit. The object of the proceeding is to pay off the stock by an equitable distribution of the assets.

Decree modified in accordance with this opinion.