### BRIERLEY et al. v. COMMERCIAL CREDIT CO.

#### No. 4357.

Circuit Court of Appeals, Third Circuit.

Sept. 17, 1930.

Frank A. Harrigan and Arthur E. Weil, both of Philadelphia, Pa., for appellants.

Duane R. Dills, of New York City, Thomas Stokes, of Philadelphia, Pa., Dills & Towsley, of New York City, and Pepper, Bodine, Stokes & Schoch, of Philadelphia, Pa. (Jack J. Levinson, of New York City, and Alfred G. Muench, of Philadelphia, Pa., of counsel), for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge.

This is an action at law instituted October 13, 1927, by Joseph H. Brierley and Arthur J. Fleming, receivers of William H. Lorimer's Sons Company, a Pennsylvania corporation, to recover $54,328.51, with interest, alleged to be usurious paid by William H. Lorimer's Sons Company, referred to hereinafter as Lorimer, to the Commercial Credit Company, a Delaware corporation, in the course of business from 1919 to 1927. The case was tried before the court without a jury, and judgment was directed to be entered for the defendant. From this order, the plaintiffs have appealed to this court.

In December, 1919, Lorimer and the defendant entered into a contract summarized by the court below as follows:

"(1) The Credit Company agreed to 'buy' from Lorimer from time to time such accounts receivable belonging to Lorimer as might be acceptable to it, and to pay 77% of the gross face value of each account offered upon its acceptance, and the balance (less certain charges) upon payment to it in full of the accounts. (2) Although each account, together with all rights in connection with it was to be assigned absolutely to the Credit Company at the time of its offer and acceptance, Lorimer, in order to avoid impairing its standing with its customers, was given the right to receive at its office, remittances by debtors on accounts, or, in other words, so far as the customer debtors was concerned, Lorimer would collect the accounts, no notice being given to them of their assignment. However, checks, drafts, notes, acceptances, and other evidences of payment received by Lorimer were to be endorsed and transmitted directly to the Credit Company, and Lorimer agreed that the Credit Company's auditors should have full access to its books, expenses of such examination to be paid by it. (3) Lorimer 'warranted' that every debtor whose account might be offered would be solvent and generally that each account would be unencumbered, promptly paid when due, and collectible without loss or litigation. (4) The Credit Company agreed to perform certain services for Lorimer. This consisted of collecting, upon request, accounts direct from debtors; advising Lorimer as to the best method of keeping books, records, and accounts; placing its credit department at Lorimer's disposal and giving credit and financial advice upon request; and also furnishing the opinion of its legal department upon the form and legality of Lorimer's sales contracts. In addition to these services, the Credit Company agreed to accept at par subject to payment of remittances on accounts forwarded to it by Lorimer and to obtain forms proper for the assignment of the accounts. (5) The contract provided that for these services and also the inspection and audit of Lorimer's accounts (which latter it may be noted was not directly for Lorimer's benefit but rather a condition upon which its right to collect direct from debtors depended) the Credit Company was to receive compensation fixed at 1/30 of 1% of the gross value of accounts accepted by it, for each day from the date of acceptance until paid, plus $5.00 per thousand on the first $100,000 of such accounts. (6) Finally the parties agreed that the contract and all rights thereunder should be governed as to validity, endorsement, interpretation, construction, effect and in all other respects by the laws of the State of Delaware."

The defendant contends that this contract is for the sale and purchase of accounts. The plaintiff contends that the transaction constituted the loan of money secured by assignment of accounts. Under the decisions in Root v. Republic Acceptance Corp., 279 Pa. 55, 123 A. 650, and Commercial Security Co. v. Holcombe (C. C. A.) 262 F. 657, this transaction constituted a loan of money and not the sale of accounts.

Whether money paid as interest may be recovered on the grounds that it was usurious depends on the interpretation of the state law covering the transaction. It is therefore necessary to determine what state law governs. The parties stipulated for the law of Delaware, but that stipulation is not effective because the state of Delaware has no relation to the transaction. In this case, the contract was executed in Maryland, but the place of performance is not clear, whether in Pennsylvania or in Maryland. According to the decision in Seeman v. Philadelphia Warehouse Co., 274 U. S. 403, 47 S. Ct. 626, 71 L. Ed. 1123, it is not necessary to determine which state was technically the place of performance. In this contract, under the law of Maryland, the stipulation of the parties as to interest would be lawful and the parties had the right to contract for the rate of interest in Maryland, and it is presumed that they stipulated for the payment of lawful interest, and, therefore, according to the law of the state of Maryland.

"'The general principle in relation to contracts made in one place, to be executed in another, is well settled. They are to be governed by the law of the place of performance, and if the interest allowed by the laws of the place of performance is higher than that permitted at the place of contract, the parties may stipulate for the higher interest, without incurring the penalties of usury.' Miller v. Tiffany, 1 Wall. 298, 17 L. Ed. 540; Bedford v. Eastern Building & Loan Association, 181 U. S. 227, 242, 243, 21 S. Ct. 597, 45 L. Ed. 834. See Junction R. R. v. Bank of Ashland, 12 Wall. 226, 229, 20 L. Ed. 385; Peyton v. Heinekin, 131 U. S. Append. ci, 20 L. Ed. 679. Cf. Cromwell v. County of Sac, 96 U. S. 51, 62, 24 L. Ed. 681.

"In support of a policy of upholding contractual obligations assumed in good faith, this court has adopted the converse of the rule quoted from Andrews v. Pond, supra [13 Pet. 65, 10 L. Ed. 61]: 'If the rate of interest be higher at the place of the con-

tract than at the place of performance the parties may lawfully contract in that case also for the higher rate.' See Miller v. Tiffany, supra, [1 Wall.] 310 [17 L. Ed. 540]; Junction R. R. v. Bank of Ashland, supra, [12 Wall.] 229 [20 L. Ed. 385]; Cromwell v. County of Sac, supra, [96 U. S.] 62 [24 L. Ed. 681]; Wharton, Conflict of Laws, § 510 h. Cf. Tilden v. Blair, 21 Wall. 241, 22 L. Ed. 632; and see Cockle v. Flack, 93 U. S. 344, 347, 33 L. Ed. 949." Seeman v. Philadelphia Warehouse Co., supra, page 407 of 274 U. S., 47 S. Ct. 626, 627.

The legality of the interest depends, therefore, upon the law of the state of Maryland. Under that law, the interest was not usurious but legal, and accordingly the plaintiff cannot recover the money paid as interest.

The judgment of the court below is affirmed.