METROPOLITAN TRUST CO. OF CITY OF NEW YORK v. COLUMBUS, S. & H. R. CO. et al.

(Circuit Court, S. D. Ohio, E. D. April 21, 1899.)

No. 887.

1. RAILROADS—NOTES FOR EQUIPMENT—OHIO USURY STATUTES.

By Rev. St. Ohio, § 3183, 8 per cent. is fixed as the limit of lawful interest. Section 3287 authorizes railroad companies to borrow money at a rate of interest not exceeding 7 per cent., and to issue bonds or notes for the same. By section 3290 it is provided that the directors may sell or negotiate such bonds or notes at not less than 75 per cent. of par. Held that, in so far as the latter sections permit railroad companies to borrow money at a rate of interest exceeding 8 per cent., their effect is to repeal the usury laws as to such companies, and that notes or lease warrants executed by a railroad company for deferred payments on equipment purchased conditionally, which were payable monthly as rental, the title to the equipment to vest in the company on their full payment, are not usurious, though their amount is greater than the stated value of the equipment with 8 per cent. interest until their maturity, but not greater than would have been required if they had borne 7 per cent. interest, and had been discounted at 75 per cent. of par.

2. SAME—AUTHORITY TO ISSUE NOTES—OHIO STATUTES.

Nor are such notes ultra vires, in view of the provisions of section 3287, Rev. St. Ohio, which authorizes railroad companies to secure their bonds or notes by a pledge of their property or income.

3. SAME—CONDITIONAL PURCHASE OF EQUIPMENT.

The Ohio act of May 4, 1885 (82 Ohio Laws, p. 238), relating generally to conditional sales of personal property, and requiring the seller, before retaking possession of the property for condition broken, under penalty of criminal prosecution, to tender to the purchaser repayment of at least 50 per cent. of the amount paid thereon, does not apply to conditional sales of equipment to railroad companies which were specially provided for by the act of March 16, 1882 (79 Ohio Laws, p. 45), recognized as remaining in force after the passage of the general act of 1885 by its amendment by the act of April 12, 1889 (86 Ohio Laws, p. 255).

4. SAME—RIGHT OF SELLER TO RETAKE PROPERTY.

A corporation making a conditional sale of equipment to a railroad company, rental to be paid therefor, and applied on the purchase price, but the title to remain in the seller until full payment, on a foreclosure of mortgages against the railroad company before full payment is entitled to take back the equipment, or, in case the mortgagees elect to retain it, to a first lien on the property of the company for the amount still due thereon.

This is a railroad foreclosure bill. The complainant, in seeking a sale under its mortgage, has brought in all persons claiming a lien on the railroad, or any part thereof, for the purpose of a sale of the road free from incumbrance. Among the defendants thus brought in is the Railroad Equipment Company. The Railroad Equipment Company claims about $40,000 on certain so-called "lease warrants," issued to evidence the rentals due upon equipment furnished to the defendant company either by the Railroad Equipment Company or its assignors.

In each of the equipment contracts under which these lease warrants were issued the company furnishing the equipment agreed to lease it to the railway company for the period of 60 months from a certain date. The value of the equipment was stated. A cash payment of 25 or 30 per cent. was to be made upon delivery, and the balance was to be provided for in 60 consecutive monthly payments of a certain amount each, making the total agreed to be paid a sum exceeding the stated value of the equipment and 80 per cent. interest thereon. The deferred payments were to be represented by so-called "lease warrants," dated in Ohio (with two exceptions, where they were dated New York), made by the railway company to the order of the equipment company, and all payable at the city of New York, with one exception, and referring to a contract of lease of even date therewith. In case of default in payment of any of the lease warrants, the lessor was to have the right to take immediate and exclusive possession, and to sell the same at public or private sale, and apply the proceeds to the payment of any and all installments of rent for the whole of said term of 60 months, whether the installments had fallen due or not, less interest at 5 per cent. per annum. If the proceeds were more than sufficient to pay the unpaid installments of rent, with interest and expenses, then the surplus was to go to the railway company, but, if there was a deficit, the railway company was liable therefor. If the installments were all paid, then the equipment, without further conveyance or transfer, was to become the absolute property of the railway company. The company defaulted on a number of the lease warrants, and in December, 1893, an extension agreement in regard to them was made. This agreement recites the failure of the railroad company to pay the lease warrants under the contracts, the forbearance of the equipment company to take possession, and its willingness to accede to the request of the lessee, and to grant, upon certain terms and conditions thereinafter set forth, an extension of time for the payment of all the said lease warrants outstanding and unpaid under said contracts, including those past due and in default. The agreement provided that the equipment company would take up the outstanding lease warrants, amounting to $116,338.39, that the railway company would pay the equipment company at its office in the city of New York, as rentals or otherwise, for the equipment, a cash payment of $5,857, and, in addition thereto, 60 consecutive monthly payments of $2,347.52 each, beginning February 20, 1894, and ending January 20, 1899; making, in all, for the deferred payments, $140,851.20. The new lease warrants were dated "Columbus, Ohio," and referred to the contract. The lease warrants, under the earlier contracts, were to be taken up and acquired by the equipment company, and held as security for the payment of the new one, and were to continue in existence, with all the rights under them, until the new contract was completed. If the contracts and warrants are valid, $40,000 is still due on them; if invalid, because of usury, the lawful amounts have been paid. The equipment company has not offered to refund 50 per cent. of the amount paid by the railway company, or any sum. In the fourth of the original contracts, dated April 21, 1890, between the Ohio Falls Car Company and the railway company, the lease warrants were executed at Columbus, Ohio, and no place of payment is named in them. By the law of Ohio, 8 per cent. interest can be stipulated for, but, in case more than 8 per cent. is stipulated for, the interest exceeding 6 per cent. is to be credited as a payment on account of the principal. Rev. St. Ohio, § 3183. The issue arises upon the bill, answer, and replication, and evidence including a stipulation as to certain facts.

Seward, Guthrie & Steele, C. A. De Gersdorff, and Richard Reid Rogers, for reorganization committee.

Parsons, Shepherd & Ogden, Morrison R. Waite, and Lawrence Maxwell, Jr., for Metropolitan Trust Co.

James Irvine, for Railroad Equipment Co.

TAFT, Circuit Judge (after stating the facts as above). The complainant objects to the claim of the Railroad Equipment Company on three grounds: First. That it includes interest upon a loan at the rate of more than 8 per cent., which is usurious by the laws of Ohio,

and that by Ohio law in such a case the excess of interest over 6 per cent. must be credited upon the principal. Rev. St. Ohio, § 3183; McClelland v. Sorter, 39 Ohio St. 12; West v. Meddock, 16 Ohio St. 417; Bunn v. Kinney, 15 Ohio St. 40. Second. That the defendant railroad company had no power, under the Ohio law of its creation, to agree to pay more than 7 per cent. interest, wherefore the contract is void, and the Railroad Equipment Company can recover only the reasonable value of the equipment furnished, with 6 per cent. interest. Third. That the Railroad Equipment Company cannot, under the laws of Ohio, seek to take possession of the equipment covered by these contracts for purposes of foreclosure or sale without tendering to the company 50 per cent. of the amount already paid on the contracts.

1. It may admit of question whether the character of this contract, as usurious or otherwise, is to be settled by New York or Ohio law. It is conceded that under the law of New York, by a statute enacted April 6, 1850 (Bank v. Hoge, 35 N. Y. 65), a defense of usury cannot be set up by corporations. But it is not necessary to decide whether the validity of the contracts depends on New York or Ohio statutes, for I think them valid under either. By section 3287 of the Revised Statutes of Ohio, the defendant company was permitted to borrow money at a rate not exceeding 7 per cent., and to issue bonds or notes for the same, and to secure them by a pledge of its property or income. By section 3290 it is provided that the directors may sell or negotiate such bonds or notes at not less than 75 per cent. of par. It has been held by the supreme court, in the case of Junction R. Co. v. Bank of Ashland, 12 Wall. 226, that section 3290 (which was the first section of the act of the legislature of Ohio passed December 15, 1852 [51 Ohio Laws, p. 286]) was tantamount to a repeal of the usury laws as to such companies. It is said that this statement by Mr. Justice Bradley, in delivering the opinion of the supreme court in that case, was merely obiter dictum, and ignored the effect of section 3287. It is true that the question of usury was eliminated from the case by the holding that the contract was a New York contract, but the particular language was used in discussing the question whether an Indiana corporation, which had been reincorporated in Ohio, had power, under the law of Ohio, to issue bonds drawing 10 per cent. interest. The question was, therefore, directly presented to the court, and had to be decided, whether an Ohio corporation could, under the act of December 15, 1852, issue bonds drawing 10 per cent. interest, and the question was answered in the affirmative. Since that decision, the act of December 15, 1852, has been amended to its present form, as it appears in section 3290, which limits the power to a sale or negotiation of its bonds or notes at not less than 75 per cent. of par. Taking sections 3287 and 3290 together, this would really restrict the borrowing power of railroad companies to loans with annual interest at the rate of $7 on $75, or something more than 9 per cent. It is not claimed that the loans here in controversy exceed such a rate. It is said that the case of Coe v. Railroad Co., 10 Ohio St. 372, overrules the construction put upon section 3290 in Junction R. Co. v. Bank of Ashland. I do not think so. It was held in the Coe Case that the issue of bonds drawing 7 per cent., payable semiannually,

was not a violation of section 3287, limiting the power of railroad companies to the issue of bonds bearing 7 per cent. or less, and that under section 3290 such bonds might be sold by the company issuing them at a discount. If this implies that bonds drawing more than 7 per cent. may not be issued, it only refers to the form of the obligation, and not to the essence, for it is palpable that the sale by the obligor of the bond drawing 7 per cent. interest at a discount is nothing more than the borrowing money at a greater rate than 7 per cent. In the case at bar the obligations are not, on their face, obligations drawing more than 7 per cent. interest, and I should hesitate long to declare them void, either as usurious or as ultra vires the defendant railroad company, on a mere objection to their form, when the railroad company really has the power to do that which is, in effect, the borrowing of money at a greater rate of interest than is stipulated for in such obligations. In so far as sections 3287 and 3290 permit railroad companies to borrow money at a greater rate than 8 per cent., they do repeal the usury laws as to such companies.

2. What has been said suffices to show that the present contracts were within the power of the defendant railroad company.

3. The contention that the Railroad Equipment Company is not entitled to the relief it prays by way of return of its equipment or a payment of the amount due until it has tendered back to the defendant railroad company at least 50 per cent. of the amount paid as rental upon the contract, is based on section 2 of the act of May 4, 1885 (82 Ohio Laws, p. 238). The act relates, generally, to "cases where any personal property shall be sold to any person to be paid for, in whole or in part, in installments, or shall be leased, rented, hired, or delivered to another," on condition that title shall remain in the vendor until value of property is paid. By its first section contracts for such sales or hiring are avoided unless evidenced and executed in a certain way, and filed, as chattel mortgages are required to be filed, with the clerk of the township, or, in certain cases, with the county recorder. By the second section the vendor or hirer is forbidden to take possession of the property on condition broken without tendering back the sum of money paid thereon by the vendee or lessee, less a sum, not exceeding 50 per cent., as compensation for the use. By the third section, violation of section 2 is made punishable as a misdemeanor. I do not think that this act has any application to personal property used in the equipment of railroads, although the terms used are general, and broad enough to include it. I base my conclusion on the act of March 16, 1882 (79 Ohio Laws, p. 45), passed three years before the act above referred to, and amended since the passage of that act. The legislature of Ohio thereby added three sections to the chapter of the Revised Statutes on "Railroads." By the first of these, all contracts for the conditional sale "of railroad equipment, rolling stock, or other personal property (to be used in or about the operation of any railroad) were avoided as against creditors or innocent purchasers for value unless recorded in the office of the secretary of state. By the second section it was declared lawful in contracts for renting such property to stipulate that the rental might be applied on the purchase money, and that the title should not

pass until the vendor had been paid, if such contracts were filed as required in the first section. By act of April 12, 1889 (86 Ohio Laws, p. 255), passed four years after the general conditional sale statute, the sections relating to conditional sales of railroad equipment were supplemented by a provision that they should extend and apply to contracts made by others than railroad companies for the purchase or rental of railroad equipment designed for use on railroads in Ohio or other states. A consideration of the two statutes satisfies me that the act of 1885 applies generally to sales of all personal property except railroad equipment. That is provided for in the special legislation of 1882 and 1889. In the opinion of the legislature, certainly, the law of 1885 did not impliedly repeal that of 1882, because it is recognized as being in force by the law of 1889. The subject of conditional sales of personal property on the installment plan to individuals, in the course of which small money lenders had, before the law, been guilty of great oppression to their poor and helpless creditors, is a very different one from the securing of liens on the immensely valuable equipment and rolling stock of railroads. In the former case the debtor is so easily oppressed that he needs the protection of the law. In the latter the contracting is between two great corporations, able to deal at arm's length. It was entirely natural, therefore, that the legislature should regard the regulation of railroad equipment conditional sales as one not affected by a general law regulating conditional sales of personal property, and should not have introduced a saving clause in the latter act. The railroad equipment act is complete in itself, and the provisions of the general act are in no respect germane or natural amendments to it. The recording in the secretary of state's office is necessary, because the equipment generally has no situs in any particular township; and yet, if the general act applies, the township recording provisions must in some way be given operation. It would certainly be a strange provision of law subjecting an equipment company to criminal prosecution for attempting to resume possession of its property upon payment for which a railroad company had defaulted. Such paternal protection for defaulting railroad companies would be novel in modern or ancient legislation, And yet, if the act of 1885 is an amendment or supplement to that of 1882, such a result follows. The equities of this case are with the Railroad Equipment Company on this issue, and a decree should be entered permitting it to take back its equipment, or, if complainants and the receiver conclude such equipment is needed to operate the road, then the equipment company must be given a lien on the corpus of the property in preference to the first and second mortgages.