METROPOLITAN TRUST CO. et al. v. RAILROAD EQUIPMENT CO. et al.

RAILROAD EQUIPMENT CO. v. MERCANTILE TRUST CO. et al.

(Circuit Court of Appeals, Sixth Circuit.   May 7, 1901.)

Nos. 870 and 886.

1. RAILROADS—CONTRACT FOR EQUIPMENT—CONDITIONAL SALES.

A contract, purporting to be a lease of equipment to a railroad company, which executes so-called "lease warrants," payable monthly during a specified time, and on payment of the last of such warrants is to become the owner of the equipment, is in legal effect a sale; the seller retaining title to the property sold as security for the payment of the price.

2. SAME—NOTES FOR EQUIPMENT—OHIO USURY STATUTES.

The effect of Rev. St. Ohio, § 3287, authorizing railroad companies to borrow money at a rate of interest not exceeding 7 per cent., and to issue bonds or notes for the same, and of section 3290, which provides that the directors may sell or negotiate such bonds or notes at not less than 75 per cent. of par, is to exempt railroad companies from the operation of the general usury statute; and notes or lease warrants issued by a railroad company for deferred payments on equipment bought are valid, although their amount is greater than the sum due on the price of such equipment with the legal rate of interest, but not greater than would have been required if they had borne interest at 7 per cent. and been discounted at 75 per cent. of par.

3. SAME—AUTHORITY TO ISSUE NOTES—OHIO STATUTES.

Under Rev. St. Ohio, § 3287, which authorizes railroad companies to issue bonds or notes and secure the same by a pledge of their property or income, a railroad company has power to issue so-called "lease warrants" for deferred payments on equipment, the title to which remains

108 F.—58

in the seller until all such warrants are paid, and then passes to the company.

**4. SAME—CONDITIONAL PURCHASE OF EQUIPMENT—RIGHTS OF SELLER.**

The Ohio act of May 4, 1885 (82 Ohio Laws, p. 238), relating generally to conditional sales of personal property, and requiring the seller, before taking possession on condition broken, under penalty of criminal prosecution, to tender to the purchaser repayment of at least 50 per cent. of the amount paid thereon, does not apply to conditional sales of equipment to railroad companies, which were specially provided for by Act March 16, 1882 (79 Ohio Laws, p. 45), recognized as remaining in force after the passage of the general act of 1885 by its amendment by Act April 12, 1889 (86 Ohio Laws, p. 255).

**5. SAME—FORECLOSURE OF GENERAL MORTGAGE.**

A corporation making a conditional sale of equipment to a railroad company, retaining title until the full payment of notes given for the price, on the foreclosing of mortgages covering all the property of the company before full payment, is entitled to take back the equipment, or, in case the mortgagees elect to retain it, to a first lien thereon for the amount still due, without any deduction on account of expenditures made by the railroad company or its receiver for the preservation or improvement of such property.

Appeal and Cross Appeal from the Circuit Court of the United States for the Southern Division of the Eastern District of Ohio.

This appeal and cross appeal are from so much of a general decree in a consolidated railroad-mortgage foreclosure case as awarded to the Railroad Equipment Company a decree for $51,400.65 as the aggregate sum due, with interest upon 20 so-called "lease warrants" issued upon renewals and extensions of several equipment contracts entered into with the predecessors of the Columbus, Sandusky & Hocking Railroad Company, the mortgagor railroad company defendant in said consolidated cause. The complainant in the principal of the consolidated causes, the Metropolitan Trust Company of New York, for the purpose of selling the mortgaged railroad free from all liens or charges, brought in various persons and corporations claiming liens upon said railroad or its equipment. Among those thus brought in was the Railroad Equipment Company. Priority in the proceeds of sale over the mortgagees and over the holders of receiver's certificates issued in said cause was accorded to the claim of the equipment company, except in so far as the proceeds of such certificates had been "expended in preserving or improving the said equipment," conditionally sold to the railroad by the equipment company or its assignors. The mortgagees in the case docketed here as No. 870 appealed from so much of said decree as found any sum to be due to the equipment company, and the equipment company has, in cause No. 886, appealed from so much of the decree as awarded to the receiver's certificates priority over its claim and lien. The "lease warrants" held by the equipment company purport to have issued for rentals for equipment furnished to one or other of the railroad companies to which the present company has succeeded by the equipment company or some company to whose rights it has succeeded. The original and renewal contracts are very lengthy. They are well summarized by the court below as follows:

"In each of the equipment contracts under which these lease warrants were issued the company furnishing the equipment agreed to lease it to the railway company for the period of 60 months from a certain date. The value of the equipment was stated. A cash payment of 25 per cent. or 30 per cent. was to be made upon delivery, and the balance was to be provided for in 60 consecutive monthly payments of a certain amount, each making the total agreed to be paid, a sum exceeding the stated value of the equipment and 8 per cent. interest thereon. The deferred payments were to be represented by so-called 'lease warrants,' dated in Ohio (with two exceptions, where they were dated New York), made by the railway company to the order of the equipment company, and all payable at the city of New York

(with one exception), and referring to a contract of lease of even date therewith. In case of default in payment of any of the lease warrants, the lessor was to have the right to take immediate and exclusive possession, and to sell the same at public or private sale, and apply the proceeds to the payment of any and all installments of rent for the whole of said term of 60 months, whether the installments had fallen due or not, less interest at 5 per cent. per annum. If the proceeds were more than sufficient to pay the unpaid installments of rent, with interest and expenses, then the surplus was to go to the railway company; but, if there was a deficit, the railway company was liable therefor. If the installments were all paid, then the equipment, without further conveyance or transfer, was to become the absolute property of the railway company. The company defaulted on a number of the lease warrants, and in December, 1893, an extension agreement in regard to them was made. This agreement recites the failure of the railroad company to pay the lease warrants under the contracts, the forbearance of the equipment company to take possession, and its willingness to accede to the request of the lessee, and to grant, upon certain terms and conditions hereinafter set forth, an extension of time for the payment of all the said lease warrants outstanding and unpaid under said contracts, including those past due and in default. The agreement provided that the equipment company would take up the outstanding lease warrants amounting to $116,-338.39, and that the railway company would pay the equipment company, at its office in the city of New York, as rentals or otherwise, for the equipment, a cash payment of $5,857, and, in addition thereto, 60 consecutive monthly payments of $2,347.52 each, beginning February 20, 1894, and ending January 20, 1899, making in all, for the deferred payments, $104,851.20. The new lease warrants were dated Columbus, Ohio, and referred to the contract. The lease warrants under the earlier contracts were to be taken up and acquired by the equipment company, and held as security for the payment of the new one, and were to continue in existence, with all the rights under them, until the new contract was completed."

R. R. Rogers, for Mercantile Trust Co. and Metropolitan Trust Co.
Judson Harmon, for Railroad Equipment Co.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge, having made the foregoing statement of the case, delivered the opinion of the court.

The principal defense urged against these claims is, that they include interest in excess of the interest allowed by the law of Ohio, and that the railroad companies entering into said contracts were corporations created under the law of Ohio, and had no power to agree to pay more than 7 per cent. interest. The transactions evidenced by the several equipment contracts are nothing more than contracts for the sale of the equipment, the title being retained as security for the purchase money. The immense verbiage employed to give these schemes the semblance of a leasing and rental is in vain. Their true character cannot be disguised. Contracting Building Co. v. Continental Trust Co. (decided by this court November, 1900) 108 Fed. 1. The notes called "lease warrants" do not bear interest before maturity. If the "value" stated in the original contracts be regarded as the "price" for which the property was sold, these notes include interest in excess of 9 per centum per annum, and in the case of two of the contracts the interest exceeds 12 per cent. per annum. Is such a rate of interest permissible under the law of Ohio?

It is difficult to add anything to the opinion of Judge Taft construing the statutes of Ohio in respect to the powers of Ohio railroad companies to borrow money. The opinion of that very able judge is contained in the record and is reported in 93 Fed. 702, 704. Upon this matter Judge Taft said:

"By section 3287, Rev. St. Ohio, the defendant company was permitted to borrow money at a rate not exceeding 7 per cent., and to issue bonds or notes for the same, and to secure them by a pledge of its property or income. By section 3290 it is provided that the directors may sell or negotiate such bonds or notes at not less than 75 per cent. of par. It has been held by the supreme court, in the case of Junction R. Co. v. Bank of Ashland, 12 Wall. 226, 20 L. Ed. 385, that section 3290 (which was the first section of the act of the legislature of Ohio passed December 15, 1852 [51 Ohio Laws, p. 286]), was tantamount to a repeal of the usury laws as to such companies. It is said that this statement by Mr. Justice Bradley, in delivering the opinion of the supreme court in that case, was merely obiter dictum, and ignored the effect of section 3287. It is true that the question of usury was eliminated from the case by the holding that the contract was a New York contract, but the particular language was used in discussing the question whether an Indiana corporation, which had been reincorporated in Ohio, had power, under the law of Ohio, to issue bonds drawing 10 per cent. interest. The question was, therefore, directly presented to the court, and had to be decided, whether an Ohio corporation could, under Act Dec. 15, 1852, issue bonds drawing 10 per cent. interest, and the question was answered in the affirmative. Since that decision, Act Dec. 15, 1852, has been amended to its present form, as it appears in section 3290, which limits the power to a sale or negotiation of its bonds or notes at not less than 75 per cent. of par. Taking sections 3287 and 3290 together, this would really restrict the borrowing power of railroad companies to loans with annual interest at the rate of $7 on $75, or something more than 9 per cent. It is not claimed that the loans here in controversy exceed such a rate. It is said that the case of Coe v. Railroad Co., 10 Ohio St. 372, 75 Am. Dec. 518, overrules the construction put upon section 3290 in Junction R. Co. v. Bank of Ashland. I do not think so. It was held in the Coe Case that the issue of bonds drawing 7 per cent., payable semiannually, was not a violation of section 3287, limiting the power of railroad companies to the issue of bonds bearing 7 per cent. or less, and that under section 3290 such bonds might be sold by the company issuing them at a discount. If this implies that bonds drawing more than 7 per cent. may not be issued, it only refers to the form of the obligation, and not to the essence; for it is palpable that the sale by the obligor of the bond drawing 7 per cent. interest at a discount is nothing more than the borrowing of money at a greater rate than 7 per cent. In the case at bar the obligations are not, on their face, obligations drawing more than 7 per cent. interest, and I should hesitate long to declare them void, either as usurious or as ultra vires the defendant railroad company, on a mere objection to their form, when the railroad company really has the power to do that which is, in effect, the borrowing of money at a greater rate of interest than is stipulated for in such obligations. In so far as sections 3287 and 3290 permit railroad companies to borrow money at a greater rate than 8 per cent., they do repeal the usury laws as to such companies."

When Judge Taft said that sections 3287 and 3290 of the Revised Statutes of Ohio, construed together, "restrict the borrowing power of railroad companies to loans with annual interest at the rate of seven dollars on seventy-five dollars, or something more than nine per cent.," and that it was "not claimed that the loans here in controversy exceed such a rate," he did not consider that the rate would be affected by the discount for the use of the money actually received, and that the rate admissible upon his construction of the statutes

must be found by apportioning the discount to the time of the loan and adding it to the running interest. His attention was called to this, but he denied a rehearing, although the rate thus determined much exceeded 9 per cent. upon two of the contracts involved, saying that the rate thus determined did not exceed the power of the companies to allow under the statute. If these Ohio companies might have made their notes bearing interest at 7 per cent., and then sold them at a discount of 25 per cent. to raise the means to pay for this equipment, we see no reason why they may not execute their notes direct to the seller, and include therein a rate of interest which they might lawfully pay if the form of the transaction had been somewhat different. That the Ohio statutes, thus construed, permit very extortionate terms to be exacted from railroad companies must be admitted. The effect is that Ohio railroad corporations are virtually outside the usury laws of the state. Every dollar of the large decree in favor of the Railroad Equipment Company represents interest in excess of 7 per cent. upon the aggregate of the original contracts, when the payments made are applied to the agreed value of the equipment furnished, with interest at 7 per cent. We see, however, no escape from the conclusion that in agreeing to pay such excessive rates of interest the companies did not violate the usury laws of Ohio or exceed their corporate powers under the law of Ohio. A like result would follow if the notes or "lease warrants" be regarded as governed by the law of New York in respect to usury, so far as they are payable there. By the statute law of that state the defense of usury may not be made by a corporation. Bank v. Hoge, 35 N. Y. 65.

Another view of these contracts has been pressed upon us in support of their validity. It is said that the agreed "value" fixed upon the equipment sold by each contract does not constitute the "price" at which the property was sold, and that the "price" which the railroad company agreed to pay was the aggregate of the cash payment and the monthly payments for which notes were given. The fact that the value of the property sold is stated in the agreement, and that the cash payment to be made is stated as a given per cent. of this agreed value, has a strong tendency to indicate that the notes given for deferred payments include the balance of this agreed value plus an agreed amount as interest for forbearance. This suspicious appearance is not controverted by evidence tending to show that the value agreed upon and the price to be paid were not identical. In such circumstances we are not disposed to rest our affirmance of the action of the court below upon any other ground than that already given.

The next objection is that the equipment company cannot maintain a suit to recover the equipment conditionally sold without complying with the Ohio conditional sales act of 1885. Rev. St. Ohio, § 4155. That act requires such a vendor to tender back to the purchaser or lessee not less than 50 per cent. of the price received. We quite agree with the circuit court, and for the reasons stated in the opinion of Judge Taft, that the act of 1885 does not apply to sales of railroad equipment. The purchase and sale of railroad equipment by

conditional contracts is regulated by the acts of March 16, 1882, and of April 12, 1889, being sections 3378b–3378d, Rev. St. Ohio, inclusive. 93 Fed. 702, 705. The title to the equipment sold under the contracts here involved remained in the vendors until fully paid for. The interest of the railroad companies and their mortgagees was but an equitable interest, and subject to the terms of the conditional sale.

The court below did not award to the equipment company a separate sale of this incumbered property, but directed that it should be sold as the property of the railroad company, and that out of the proceeds of sale the equipment company should be paid next after costs and receiver's debts so far as such debts were created "in preserving or improving said equipment." We think this reservation of priority to receiver's debts incurred in preserving or improving this equipment was erroneous. The purchasers were contractually obligated to preserve and repair the property. If they saw fit to place improvements thereon, it was at their own risk. The purchasers will get the benefit of the improvements by the enhanced value of the property. Yet under this decree, if the property should sell for only the amount expended thereon, the vendors would go unpaid, having been improved out of their property without their consent. The decree will be modified in this respect, and in all others affirmed. The costs in No. 886 will be paid by the receiver out of any funds in his hands.